LEMMON, Judge.
Defendants, in appealing from a judgment in this automobile accident case after a trial on the merits, principally question the imposition of liability on the basis that the testimony of the witnesses presented by plaintiffs varied significantly.
The accident occurred about 4:00 a.m. near the intersection of Causeway Boulevard (a north-south multilane, divided thoroughfare) and Jefferson Highway in Jefferson Parish. Plaintiff driver had been traveling south on Causeway Boulevard and entered a U-turn lane under the Jefferson Highway overpass in order to proceed in a northerly direction on Causeway Boulevard. There was a yield sign located at the point where the U-turn lane intersected the lanes for northbound Causeway Boulevard traffic.
Plaintiff driver testified that he was stopped at the yield sign when he was struck by defendants’ truck, which had attempted to pass on his right. (In deposition he had described the collision as occurring in the same manner but at the time he had just entered the short U-turn lane.)
This version was substantially corroborated by the passenger (who was also a plaintiff) and by a disinterested witness who, while walking to work, observed defendants’ truck hit the curb on the right side of the U-turn lane and then strike plaintiffs’ car.
On the other hand, defendant driver testified that plaintiffs’ car stopped momentarily before entering the U-turn lane, then entered the U-turn lane and, after stopping *126 at the yield sign, proceeded slowly onto Causeway Boulevard and then made an unexplained sharp right turn into the left side of his truck.
The trial judge resolved the conflicting factual testimony by accepting the version presented by plaintiffs and the witness they presented. Although there were some variations between the trial testimony and deposition statements of these witnesses and some discrepancies between the witnesses themselves, the variations and discrepancies were not so significant as to charge the trial judge with manifest error in accepting the overall depiction of the occurrence.
Defendants also question the $6,500.00 award of general damages to plaintiff driver, contending the evidence does not support the trial judge’s finding that the accident caused an aggravation of an os-teoarthritic condition in plaintiff’s knee.
After the April 16, 1971 accident plaintiff was checked in a hospital emergency room, where X-rays were taken. Several days later he was examined by Dr. A. J. Hackett who reported findings of pain and muscle spasm in the lumbosacral and cervical areas and contusions of the abdomen. Dr. Hackett treated plaintiff with physical therapy, heat treatments, medication and a lumbosacral corset and ultimately discharged him on September 17, 1971.
At trial Dr. Hackett stated he had observed an osteoarthritic condition on the X-rays taken at the hospital emergency room and opined that the aggravation of this condition resulted from the accident. The doctor did not mention plaintiff’s ■ knee at any point in his testimony, either in describing his examination, diagnosis, and treatment or in stating his opinion about the osteoarthritic condition. Significantly, the X-rays taken at the hospital emergency room did not include an X-ray of the knee.[1] Furthermore, Dr. Hackett diagnosed the aggravated osteoarthritic condition as resulting from the accident on the basis that plaintiff did not have any previous problems in the cervical area.[2]
*127 The knee was never mentioned in the hospital emergency room records or in the records of the treating physician, and the first medical evidence of any complaint with the knee was more than two years after the accident.[3] We therefore conclude plaintiff failed to establish it was more probable than not that the ostebar-thritic condition (which existed in the knee two years after the accident) was aggravated by the accident.
The trial judge’s award of general damages included consideration of an aggravation of the knee condition. Since we have found the record does not support an award for this injury, we set aside the trial judge’s award of general damages and proceed to fix an award based on the injuries supported by the record.
We conclude that an award of $3,750.00 in general damages will adequately compensate plaintiff for the damages he proved resulted from the accident. Additionally, the special damages awarded by the trial judge will be reduced by the sum of $222.00, which is the amount charged by one of the orthopedic specialists for his examination and treatment of the knee more than two years after the accident.
Accordingly, the judgment of the trial court is amended to reduce the award in favor of Albert Breckenridge to $5,522.55. As amended, the judgment is affirmed.
Amended and affirmed.
GULOTTA, J., dissents in part and assigns reasons.

. Plaintiff’s petition did not mention any injury to his knee but did demand damages for “osteoarthritic changes of the cervical spine.”

. Dr. Hackett testified as follows:
“Q. Now I notice you diagnosed osteoar-thritic changes, in your medical opinion, is there any connection between these findings and the trauma which the reverend might have received in the accident?
“A. Connection in terms of what?
“Q. Causation.
“A. No.
“Q. Prior to your examination on April 20th, 1971, had you ever taken x-rays of the cervical or lumbar region of the area?
“A. No.
“Q. So at the time that you reviewed the x-rays from Ochsner Hospital, you didn’t have any other x-rays to compare it to?
“A. Right.
“Q. Insofar as any aggravation of this osteoarthritic condition which the reverend might have had, could you say with a medical certainty that his condition was aggravated by the accident?
“A. Yes.
“Q. And is it possible to diagnose such an aggravated condition by comparing x-rays of the man before the trauma and after the trauma?
“A. Would you repeat that?
“Q. Is it possible to diagnose an aggravation of an osteoarthritic condition without the benefit of prior x-rays, x-rays which would reflect the impact and then after the impact?
“A. Even if he had x-rays, if he had x-rays two days before, you could not determine that.
“Q. If x-rays were taken after of a person’s body, especially of the cervical area and these x-rays indicated some disc space narrowing and some time after these x-rays, the individual was involved in an accident and then x-rays were taken again of the same area and the same disc space narrowing is revealed in the first x-rays, would you conclude from those hypothetical facts that there is no change in the person’s osteoar-thritic condition?
“A. The disc space narrowing is not necessarily related to the arthritic condition and that is a separate finding. It would be manifested in a different fashion other than the dis space narrowing.
“Q. Would you not need prior x-rays to determine some aggravation?
*127 “A. As far as the osteoarthritic condition?
“Q. As far as the aggravation.
“A. No.
“Q. How did you diagnose that condition?
“A. If the x-ray findings indicate that there is an osteoarthritic condition present, the patient had no complaints referrable to the neck prior to the accident and then he had maybe a prolonged period of time following those symptoms. It is reasonable to conclude that this aggravated it.
“Q. Did the reverend indicate whether or not prior to the accident he had experienced any osteoarthritic complaints?
A. No.”

. In May, 1973 an orthopedic specialist noted findings compatible with osteoarthritis of the knee and, on the basis of the history related by plaintiff, concluded the accident caused an aggravation of the condition.
In November, 1973 a second orthopedic specialist found osteoarthritic changes, but declined to attribute any relationship to the accident because Dr. Hackett had never mentioned the knee in any of his records.
We conclude that the evidence presented by the orthopedic specialists proved only that plaintiff suffered from an osteoarthritic condition of the knee at the time of the examinations (which were well over two years after the accident). Other proof was necessary to connect any aggravation of this condition with the accident, and this additional proof fell short.